Good morning, ladies and gentlemen. Our first case for argument this morning is Planned Parenthood against the Marion County Prosecutor. A few words before we get going. We are doing this remotely, and there are always potential problems with the technology. If that happens, I will ask you to pause, or I may ask some attorneys to pause so that judges can get a question in. And we will get this resolved without cost to anybody's time. All right, Mr. Fisher, please proceed. Thank you, Judge Easterbrook, and may it please the court. The Indiana statute at issue here merely requires medical providers to report 25 specified complications arising from an abortion. The district court first enjoined the statute because it was not clear that that list of 25 complications was exhausted. When the legislature fixed that problem, the district court permanently enjoined the statute on the theory that the causative designation arising from is somehow too vague for reasonable medical providers to discern its meaning. Mr. Fisher, let me ask you, maybe I come to this from a strange perspective, having just finished taking a careful look at federal procedure. But there's a very lengthy 100-page chapter practically in the book about what arising from means in Section 1331. But I want to focus. Do you think this causation measure is but for cause? Do you think it's proximate cause? Do you think it's substantial factor cause? We think it's but for cause. All right, so let me ask you. I mean, but for the fact that a man named Kenneth Wood met somebody named Lucille Padmore in seventh grade, I wouldn't be sitting here. That meeting was clearly the but for cause of my being here. And yet we would think that there were a lot of intervening events that mattered more. Isn't but for cause susceptible to quite attenuated connections? Well, I don't think there's any doubt about what it means. I think what you're pointing out is that maybe people would differ about how seriously to take the significance of a but for causal event. But that has nothing to do with vagueness doctrine. That only goes to whether— No, I'm not sure. I mean, vagueness doctrine is when did the people subject to this statute realize that there is a reporting obligation? And actually, the other thing that came to my mind were the comments of Chief Justice Roberts in the Massachusetts against EPA lawsuit. He was talking about standing, obviously a somewhat different thing, but he was talking about causation and saying, yes, you know, if you have certain things, then eventually maybe global warming will get worse, but there's a really long chain there. Sure, but again, I think that's a matter of what's proximate and what is significant and what must be dealt with and addressed by people who are in a position to address them. And that's really only about, I think, the substantive authority of the legislature. It's not about vagueness. It's not about what we can expect medical providers to understand their obligations to be under the statute. So you think then that as long as, say, you know, a 23 woman has an abortion and when she's 45, you know, after her father has just died, she's experiencing anxiety. So the medical provider is supposed to take her history and say, well, actually her anxiety seems to be a little worse than it would have been because she had the abortion when she was 23, so I better report this. Is that the way— That's exactly right. That's exactly what the statute requires. That's— As long as it's a reasonable medical judgment, and we think that that's sort of, you know, inherent in the way that this would apply. What is a reasonable medical judgment? Well, but I have a question about reasonable medical judgment, too, and then I'll let you continue. Sure. I want to know whether you think under this statute this is a subjective matter for the doctor or an objective matter because it seems to me that makes quite a big difference. If it's a subjective matter, then a particular doctor might be more persuaded by the medical literature that says there is no link, for example, between an abortion and a later early, you know, preterm pregnancy. And another doctor might be quite persuaded by that—by those studies. I don't take any position on which studies are right, but it seems to me if it's a subjective standard, a doctor who thinks that the science is just no good behind some of these things would have no reporting obligation, whereas if it's an objective standard, then the state would second-guess the physician's judgment. Right, and we've taken the position that it's objective, that this is about—and it's not specifically written in the statute, but when we think about how we would envision a prosecution going forward in some extreme case, we think the state would have to be at the burden of proving beyond a reasonable doubt that an objectively reasonable medical provider would have discerned the causal connection. If there are competing studies, that may be a very hard burden to meet, but we think it nonetheless is an objective standard. And I think, you know, before we rush to the conclusion that that's absolutely what the statute provides, I think we need to also remember what this court has said about uncertainties in this regard, which is these really ought to be matters for state courts to fill in the gaps. If there's uncertainty about how to understand the application of the statute, as long as there's a core meaning of the statute, and I think there very clearly is, those marginal questions— You're going to say, what would the reasonable physician somehow think? Or other provider. I guess it's not just physicians who have this reporting requirement. Well, even Planned Parenthood acknowledges on pages 9 and 10 of its brief that there are complications that it acknowledges arise from abortion. They think they're quite rare, but they acknowledge that many of those in the list do arise from. Now, I think the uncertainty that you're talking about really is not uncertainty about the meaning of the statute. It's factual uncertainty in a given situation, and that's exactly the sort of thing that this court in Cook said does not undermine the constitutionality of the statute on a vagueness challenge. I'm not sure it is factual uncertainty. I mean, if we don't really know when you're supposed to report, some people call this the chapeau, you know, the language that applies to everything. And this is the arising under language that is the concern of the district court. Well, again, I don't think that there's a lack of clarity about the meaning of that. It is but-for. We deal with but-for causation all the time in the law. We have a pretty good grasp on it. But it's accompanied with approximate cause rule in tort. It's not just but-for causation. Not necessarily. Sometimes there's strict liability. So my point is that that's not a vagueness issue. That is, there may be uncertainty about a given fact. So you're saying that this might also be a strict liability statute? No, what I'm saying is that we don't always go to proximate causation to save a rule of law from some sort of vagueness concern. But don't you think it matters for people subject to this statute to know which of those options that you've just set forth is the government one? It might matter more if we were talking about some kind of underlying protected conduct, which is oftentimes why we see vagueness paired with overbreadth. But here, even if somebody is uncertain, if a physician or a medical provider is uncertain in a given case, they can always report even if there was no obligation. That doesn't transgress any underlying constitutional right. It may affect the quality of the data. We don't know how that's going to turn out. But there is a safe harbor here, which is if you have any doubt at all, just report it. And I think we also shouldn't overlook the likelihood, you know, in practice, that what's going to happen if this injunction is lifted is that the Department of Health is going to promulgate regulations, as it has the authority to do, to give guidance on exactly how to comply with this. Can I ask you another question? Yes, I mean, certainly regulations, you've made that point. So this statute, I take it, is in a sense extraterritorial in application, because Indiana, as I read this statute, doesn't care where the earlier abortion occurred. It could have been in the United Kingdom. It could have been in New York. It could have been, you know, in Mexico. As long as there was an earlier abortion, Indiana is collecting this information. Right. That's my understanding as well. Yes. But I don't take that to be extraterritorial. I mean, of course, what we're talking about is the obligation of people in Indiana, medical providers in Indiana. So it's, you know, it certainly doesn't care where the abortion occurred, but it cares where the medical provider is and under whose governance that provider is. Mr. Fisher, why doesn't the uncertainty and even disagreement in the medical community over whether particular complications that are listed in the 25 could even arise from an abortion, support the potential arbitrary enforcement of this statute? Well, the enforcement is going to be limited by- And I'm sorry, let me just- It's crystal clear from reading the record that some of these, the medical community would agree, are potential complications, but some of them are pretty tangential. Well, I will concede only that there's disagreement over some of them. That's certainly the case, and I don't think this is the forum for the court to get into a battle over sort of who's right about that. Now, if the General Assembly has- I'm not saying I want to get into who or that we should get into who's right or who's wrong, but since even in the objective medical community, there's disagreement, why wouldn't that just lend itself to arbitrary enforcement of this provision? Because the language of the statute is clear. It's not about- I think at that point, we're not really talking about arbitrary enforcement. We're talking about the significance of the result of the reporting, and the legislature in its assessment has decided we don't know enough, and we want to know more about these particular complications. Is that what the legislature decided, or did the legislature decide that it wanted to discourage abortions, which of course you argue would be its prerogative if that's what it wanted to do? Yeah, but I think it's pretty clear. I don't think Planned Parenthood has said that that has anything to do with this case. This is about gathering information. Well, I think Planned Parenthood did make that argument, but in any event, I'm a little curious that since the Supreme Court has made it very clear that if the state of Indiana wants to discourage abortions, it's entitled to do that, why that isn't your argument. No, no. Our argument is that there's another legitimate interest, which is safeguarding and advising women of information that would affect their health, and this is about trying to gather more information about abortion. But the point is, even if there's disagreement about the significance of the connection between a complication and the abortion, the legislature is still entitled to decide it wants to gather more information about that. Then if it takes further action, that can be a different question about whether there's a sufficient connection, although we think they're entitled to substantial deference. But it's certainly not a vagueness issue about whether something has to be reportable just because there's disagreement about its significance. Well, the vagueness comes from figuring out the connection. Somebody goes into a coma. I mean, people go into comas, sadly enough, every day, and men do, women do, and sometimes children do, and linking that coma to a remote abortion. I think if the legislature had said if any of these things happens within six months of the procedure or within a year of the procedure, it might be on stronger ground saying that there's some rational basis for thinking that there's a link. But when you say it could be 25 years later, it's troublesome. Well, but I think that's just a disagreement between the assessment of whether there can be a connection. There is scientific literature that suggests that there can be, and in the hypothetical you stated, if the doctor has concluded under use of medical knowledge and judgment that there is a connection, then that's reportable. But that doesn't mean whether you agree with that or not, that doesn't have anything to do with the lack of specificity in the statute. It's reportable. Now, what we do with that information and the quality of the data we get, that's a different question. And indeed, gathering this information will better permit the scientists, the epidemiologists, and others to debate about whether there's a connection, how significant it might be, and what to do with it. I'm persuaded by that. It seems to me that if you are risking loss of your medical license, what you should do is you should take this list, 1 through 25, and whether it's man, woman, or child, you should just send in the information, certainly for all women who might or might not have had an abortion, maybe they didn't even tell you, just send it in, and it's going to make abortions look as though they are much riskier than they are. Look, we don't, first of all, think that you would be held liable if you didn't know about the abortion, especially if in the exercise of the ordinary standard of care you had no reason to know. But let's just assume that that's right. Let's assume that the way to comply with this without any uncertainty whatsoever is to over-report. That's okay. That doesn't have anything to do with the vagueness of the statute. On the back end— Why is it junk data, though? I mean, you know, instead of actually complying with what the statute says, since you can't figure out what arising from means, you should have written a statute saying, as used in this section, abortion complication means the existence of any of the following 25 things, period. Well, look, you may worry about junk data. I don't think sitting here we can predict that that is necessarily going to be the result. If it is the result, that's something that those who study the data can write about, and the legislature, if it wants better data, can write a better statute. That has nothing to do, though, with vagueness. It has to do with the quality of the data that comes out of the reporting that's required. I still think— Well, go ahead. Go ahead. My concern is still the ability of the medical providers in Indiana to understand, from this statute, the scope of their reporting requirement, given the very significant penalties. I really stress loss of the license. I realize it's also a misdemeanor, which is a criminal offense, after all. You know, there's a big stick at the other end of this, so they are— especially when they realize that their own personal judgment can be overridden if somebody thinks that an objective person would have thought differently. It's a hard statute to know when you should do something. I don't think it's hard to know. I think it may be a breadth concern, but there's no constitutional right against an overbroad statute in this context. It only has to do with the quality of the data. The Indiana Supreme Court is there on the back end to police the substantive standard that gets put forth in a criminal trial. The Department of Health is there to promulgate regulations, to tell physicians and other medical providers exactly how to comply. And the Medical Licensing Board is composed of physicians who are also going to be concerned about this in terms of medical judgment. So I think there are many safeguards built into that. I want to save time for a little, but Judge Saineev, it looks like you have a question. I want to make sure I get to that. Thank you, Mr. Fisher. This applies to the medical profession. It's not limited to doctors who perform abortions. So one of the enumerated conditions is cardiac arrest. You have a cardiac surgeon who treats somebody who had an abortion 10 years ago for cardiac arrest. This doctor, cardiac surgeon, she doesn't have any exposure to or training in abortion. So what's the standard that applies to her? Well, I think, first of all, we have to assume she knows about the abortion. If she doesn't know about the abortion and the exercise of the standard of care isn't required to know about the abortion, then we don't worry about it. If she does know about the abortion, it seems to me she consults the medical literature. If in her assessment a reasonable physician would report that as arising from the abortion, then she reports it. But that's, I think, how she should think through it. And so we're going back to the same medical judgment that we expect physicians to exercise all the time. There's nothing new about any of this. So it's kind of a broader medical standard of care as opposed to something within that subspecialty? You're expanding what these doctors are required to know? Well, no, I don't think we're trying to affect the standard of care for any physician in any given context. So I think it can be relevant to the context in which they're practicing. I think it can be relevant. All of this, of course, can be, I think, resolved through the regulatory process and, if necessary, through declaratory judgment actions. There's no need to bring down the heavy hand of vagueness doctrine on a statute that merely is using but-for causation as its trigger. How would you bring up a declaratory judgment action on a question of omission? Well, I don't see why there would be a problem with that. I mean, I think, as the court said in the IU fetal tissue research case, that that is an avenue that's available. If you have a specific circumstance that you need clarity on, you can file a declaratory judgment action and get clarity in the law.  That case was different because there was a penalty if you did something affirmative. So you could go in and get a declaratory judgment for should I affirmatively do this. This is a penalty if you don't do something, an omission. Right, but I think you would just ask for the declaration that you are not required to report. I don't see why the act or omission distinction is relevant to the availability of that means to resolve. But I would like to reserve the remainder of my time, if I may. Thank you. Certainly, counsel. Mr. Rose. Thank you, Your Honor. May it please the court. The biggest problem at issue in this case arises directly from the fact that many of the supposed complications listed in the statute have absolutely nothing to do with abortion. But Mr. Rose, I'm going to jump in right away with you and say that the critical word you just uttered was many as opposed to all. And as I look at this list, I might not pick out very many things that have to do with abortion. But number seven, failure to terminate the pregnancy. Number eight, incomplete abortion, retained tissue. Maybe that's it. But there are a few things that seem to me unequivocally connected to abortion. And if there is at least some core of this statute that can stand, the state has argued that it follows a severability doctrine and we should just save the parts that are valid and perhaps strike down the others. And the district court didn't see it that way. The district court saw the whole thing as tainted by this vagueness of the arising under. But what about the ones I've just mentioned? Incomplete abortion, failure to terminate the pregnancy. Numbers seven and eight. Judge, in any vagueness challenge, there will be events on either end of the spectrum that simply do not fall inside the gray area. The fact that we're able to excise certain events listed in the statute that potentially arise from an abortion under any definition of the arose from phrase does not change the fact that we do not fundamentally understand what that phrase itself means. The reason we don't understand is... Mr. Rhodes, I have a question which you might perhaps view as arising from Judge Wood's initial question or perhaps your observation that if you open a civil procedure casebook, at least 100 pages are devoted to the interpretation of the phrase arising from. It's the key to federal jurisdiction. And it turns out to be a very common phrase in the law, as is the concept of causation. I was struck by the fact that neither the district court's opinion nor your brief cites a single other decision in the history of the United States holding that phrase to be unconstitutionally vague. I tried to find one, and I couldn't. Have I missed something? Are you asking us to hold a core phrase in American jurisprudence unconstitutional for the very first time? Under the circumstances of this statute, yes. And the reason for that is... I take it then the answer is no, you're not aware of any other such case. That is correct, Judge. Now, just a few years ago, the Supreme Court had a case arising from a criminal statute enhancing the penalty if an illegally sold drug caused death. The justices showed that that simple word was capable of at least five and maybe more interpretations. They chose the one they thought best. Should they have held that phrase unconstitutional instead because it's in a criminal statute? Judge, I'm not equipped to answer that question as I sit here. Let me put it more generally. The word cause is important in all criminal law. The standard interpretation of murder is doing something that within a year and a day causes someone to die. You can't adjudicate any murder case without a question of causation. Is all murder law unconstitutional? Because causation is a debatable issue. As we've been through, it could mean but-for causation. It could mean proximate causation. There could be mixed motives. If you think of the case in which two people fire bullets simultaneously and they both hit and the person dies, who has caused the murder? That's what you encounter in first-year criminal law. You can't do a murder prosecution without unraveling what may be a very difficult question of causation. Is all murder law unconstitutional? Of course not, Judge. Why is this a worse causation problem than the ones that you say, of course they aren't problematic? The problem here, Judge, is not the standard for causation. It's not whether it's but-for or approximate cause. The problem in this case is that we simply do not know how direct or how tenuous that link between point A and point B is. Why is that any different from my murder hypothetical? It's not a hypothetical. It's what happens every day. It's less than 200 years of litigation in this country, and even now in many jurisdictions, no one knows the answer to my two-bullet question, which is not a hypothetical. It actually arises. Judge, in plain English, no one would describe a bad reaction to a blood transfusion as arising from the abortion procedure. No one would describe hypoglycemia, low blood sugar, as something that arises from abortion. And yet we know under the statute, both from the statute itself and from the state's brief, that under at least some circumstances, that is something that is a reportable complication under the statute. So, Mr. Rose, are you, in a sense, making, at least in part, the argument that some of these things, at least, suffer from the post hoc ergo proctor hoc fallacy that, you know, somebody has an abortion and they are hypoglycemic for a while, but there may not be any link between the abortion and the hypoglycemia? I think the state would tell you that there has to be some link. What we don't know is exactly what that looks like. Do you believe, like, just a temporal link or a medical link? And the answer to that, Judge, is I have absolutely no idea. And that's, of course, the point behind our vagueness challenge. No one thinks that renal failure is a real direct potential complication of abortion. If someone gets in a car accident on the way home from the facility and suffers renal failure as a secondary consequence of that, truly that meets the state's Part 4 standard. It seems entirely impracticable and unreasonable, and I can't imagine that a state court would interpret it that way. But were it not for the statute, I would say the same exact thing about a bad reaction to a blood transfusion that a woman gets wholly apart from the abortion itself. Suppose this statute read much more like what Judge Easterbrook just mentioned for the murder statute, that if any of these things happens within a year and a day of the abortion, then they will be deemed to have arisen from the induction or performance of an abortion. Would that be better? If we take out any causal link whatsoever and say, if you discover this within X period of time of an abortion procedure, you have to report it, there's no vagueness issue. There very well may be other issues with that statute, but there's no vagueness issue. And the problem that we're raising, it's not, and we talk about hyperglycemia and we talk about the blood transfusion and we talk about renal failure and the other somewhat far-fetched complications of this under our readings of literature, but the problem itself is the, I don't want to say mundane, but the more mundane one, Planned Parenthood needs to know what to do today when they diagnose an infection in a patient, which may have a hundred different causes. They need to know what to do today when a woman walks in their door and says, I've been anxious over this procedure. Is that an abortion complication? Does it matter if she would have felt the exact same way if she were undergoing another outpatient procedure? Does it matter if her anxiety results not from the medical procedure as such, but from concerns about an abusive spouse? We simply don't know the answer to those questions. Why isn't Mr. Fisher's solution to that appropriate? Then just report it, especially if it's something happening at the time or near the time of the abortion itself. Judge, obviously in any case, the practitioner, whomever, has the ability to just over-report, to treat everything as an abortion complication. I don't want to ignore the administrative burden that reporting everything, including minor infections, reported. It sounds like the state's willing to take that on. The state very well may be willing to take that on. Obviously a significant burden to providers throughout Indiana, not just Planned Parenthood. The danger, of course, is that what we're going to get after this, if this statute goes into effect, is not some mass of data sitting in a drawer at the Indiana State Department of Health. We're going to get an annual report from the Department of Health saying in Indiana last year there were this many abortion complications. Counsel, let me give you another example of notice statutes. One of the best known is the Occupational Safety and Health Act, which requires every employer to notify the agency about any workplace accident or loss arising from, and then there's this list of things that happen in the workplace. Is that unconstitutional? I don't think so, Judge. I don't see how that's any different from this one. This statute has to do with medical procedures. The Occupational Safety and Health Act has to do with workplace procedures. But the idea in both cases is to require reporting of bad outcomes related to inputs either in the medical procedure or in the workplace so that those two may be connected later. It's the same governmental goal and the same basic statutory structure. Why should they be treated differently? Judge, the state of Indiana is not requiring the reporting of some massive data to be analyzed later. It is requiring the reporting of abortion complications. I wish you could address my question, which is why a statute like this should be treated differently for constitutional purposes from a reporting statute like the one that's on the books for the Occupational Safety and Health Act? And the reason, Judge, is that, once again, we simply don't know how attenuated or how direct the— Why is that—excuse me. Once more, why is this any different from the problem under OSHA? Right? You can—as with arising under in the federal jurisdiction statute, you can not know at the outset what the answer will be for hundreds, thousands, millions of different situations in a workplace that can lead to an injury. You can't give the answer to every one in a causal phrase. You have to work it out. That's why I'm asking why the Indiana statute is different from the workplace injury statute. Judge, the Indiana statute itself creates that causal link. I thought that your answer was a different one, which is that arising from the induction or performance of an abortion, as the state is presenting that phrase right now, could mean any time in the person's life. And to my knowledge, the OSHA statute doesn't allow the employer to decide, well, I guess maybe I'll just report this thing 15 years later. The OSHA statute expects prompt reporting of these workplace incidents. So anyway, I thought that—let me ask you somewhat different questions. It comes at this from a different point of view. Your brief made me think that actually the burden of this statute is going to fall more heavily on primary care physicians and specialists of all other kinds in the state of Indiana, not so much on Planned Parenthood, because both the medication abortions that we're talking about here and the surgical abortions that we're talking about here are performed very early in the pregnancy, and the person goes home, and it's not likely Planned Parenthood will be encountering any of these complications later. So are you essentially asserting someone else's rights, or is this something that really hits Planned Parenthood too? No, Judge, it's undisputed on this record that Planned Parenthood routinely provides care to patients who suffer any number of these so-called complications. They treat the infection they discover before, during, or after the preceding procedure. They respond to patient inquiries after the medication abortion, and it's certainly well within the realm of possibility that a woman will revisit Planned Parenthood in the future, either for aftercare directly related to the abortion or for any number of other family services. For the more ordinary care that Planned Parenthood provides. Of course, and obviously we're not treating comas. Obviously that's not something that Planned Parenthood will do, but the fact that the statute does include, I'll say, severe, severe outcomes doesn't mean that we don't have to know today for Planned Parenthood what that arose from phrase does mean. And I've been talking about the causation issue, the vagueness issue as we see it in terms of the directly related, more tenuous concern that we have. The other vagueness problem itself is that in many circumstances there will never ever be certainty as to causation. Obviously the parties have different positions on whether adverse mental health outcomes are adverse. Yes, I was going to ask you, in the waning minutes of your argument, if you wanted to address your backup argument, which is that Conditions 23 about psychological matters and 25, any other adverse event, even if the rest of the list is fine, these are vague. So if you could say a word about that. Of course, Judge, and it's undisputed that these events, like several of the others, do affect Planned Parenthood specifically. Taking the mental health problems first, the state's only argument in that regard, it doesn't deny that requiring the reporting of mental health symptomology would be vague. That's impossible for anyone to ascertain ever whether something's reportable. The state's only argument is that the statute must be read to refer to disorders, diagnoses rather than symptomology. There's no interpretation of the phrase anxiety that refers to anything other than anxiety. And if we didn't know that just from reading the word, we'd know it by the statute's reference to suicidal regulation, which is, of course, a symptom of a diagnosis. So, too, with the adverse event language, the state reads into that language something that would exempt the normal effects of an abortion, of a medication abortion, from the adverse event language. The federal regulations, the exact same one that defines adverse event, actually, has a specific definition for an unexpected adverse event, or an unexpected adverse reaction. For whatever reason, that simply is not the definition that Indiana has chosen to import into its statute, and the state doesn't seriously dispute, I don't think, that the adverse event, that definition itself, referring generally to an adverse medical occurrence is itself vague. I have nothing further. Thank you very much. Thank you, Mr. Rose. Anything further, Mr. Fisher? Thank you, Judge. First, I want to go to Judge St. Eve, your question to Mr. Rose about why our sort of safe harbor approach of over-reporting would be problematic. And I think the only response that I heard was that it might increase the administrative burden. But, of course, and I took that to mean on the physicians and other medical providers. But that, of course, has nothing to do with the vagueness doctrine. That's, I think, a wholly different issue. And, indeed, there is no undue burden challenge in this case. So I don't think that that is a response as to why the kind of safe harbor that we're talking about wouldn't work. I just want to touch very briefly on the backup arguments that Judge Wood raised. First, as to the psychological complications, I think here, again, we have an interpretation of the statute that we think is the best reading. The way to get that resolved is going to be via regulatory directives where the public, including Planned Parenthood, can have input, failing that declaratory judgment action. It's also worth noting that Dr. Stutzman, one of Planned Parenthood's physicians, acknowledged in his declaration, this is appendix page 21, that he understood what psychological complications meant early on in the case. So I don't think there's a very strong ground for that. As for adverse event, I think there all we're doing is invoking the same kind of reporting structure that gets used when we're talking about FDA testing, the same reporting that everybody has gone through even to get the COVID vaccines. This is obviously very high stakes testing and reporting that goes on, and all we're doing is taking that and attaching it to the statute. So I think that it's sufficiently clear in that context and is so here as well. Thank you very much. Thank you, Mr. Fisher. The case is taken under advisory.